Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 5827 | **DATE** | 12/13/2001 |
| **CASE TITLE** | IBJ WHITEHALL BANK & TRUST CO. vs. CORY & ASSOCIATES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for judgment as a matter of law notwithstanding the verdict or, in the alternative, for a new trial is denied. Judgment is hereby entered on the verdicts in favor of Plaintiff IBJ Whitehall Bank and Trust Co. As assignee of Cory, in the sum of $20,367,519 plus costs of the suit.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 17 2001 | |
| ✓ | Docketing to mail notices. | | 235 |
| ✓ | Mail AO 450 form. | deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | 01 DEC 14 PM 4:06 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| IBJ WHITEHALL BANK & TRUST CO., | ) |
| Plaintiff, | ) |
| v. | ) Judge Ronald A. Guzman |
| CORY & ASSOCIATES, INC., | ) 97 C 5827 |
| Defendant and Third-Party Plaintiff | ) |
| v. | ) |
| INSURANCE BROKERS SERVICE, INC., and TRAVELERS INDEMNITY COMPANY, | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pending is third-party defendant Insurance Brokers Service, Inc.'s ("IBS") motion for judgment as a matter of law notwithstanding the verdict or, in the alternative, for a new trial. For the reasons set forth below, this motion is denied.

### Facts

This case, in which third-party plaintiff Cory & Associates, Inc. ("Cory") sued third-party defendant IBS for breach of contract and breach of fiduciary duty, went to trial in June, 2001. At the conclusion of the trial, on June 29, 2001, the jury found that IBS had not breached its contract with Cory but had breached its fiduciary duty to Cory.

## Discussion

As motions for judgment notwithstanding the verdict raise only questions of law, the court does not exercise discretion in making its ruling. Rather, it makes a ruling as a matter of law. *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 285 (7th Cir. 1982). The Seventh Circuit has held that '[i]n this circuit in diversity cases the state law standard for a judgment n.o.v. is applied.'" *Id.* at 285 (quoting *Oberman v. Dunn & Bradstreet, Inc.*, 507 F.2d 349, 352 (7th Cir. 1974)). In Illinois, so long as credible evidence supports a verdict, a reviewing court will not set it aside merely because conclusions other than the ones drawn by the jury could reasonably be drawn. *Kapsouris v. Rivera*, 319 Ill. App. 3d 844, 747 N.E.2d 427 (2nd Dist. 2001). "A judgment *n.o.v.* is properly entered only in cases where the evidence, viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Id.* In fact, "[t]he court cannot enter a judgment *n.o.v.* if there is any evidence, together with reasonable inferences to be drawn therefrom, that demonstrates a substantial factual dispute or where the assessment of the credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Id.*

Courts follow a different standard for determining whether or not to grant a motion for a new trial. Here, the Court has discretion and its decision is made as "a matter of federal procedure not governed by state law or practice." *General Foam Fabricators*, 695 F.2d at 288. The Court may grant a new trial if it determines that: (1) the verdict was made against the manifest weight of the evidence; (2) the damages were excessive; or (3) the trial was in any way unfair to the moving party. *Id.*

IBS first argues that Cory's third-party breach of fiduciary duty claim is barred by statute,

namely the Illinois Insurance Liability Placement Act ("IIPA"). To support this contention, IBS asserts that because Count IV is both a derivative action and an indemnity action, it did not accrue until after the effective date of the statute, as such claims do not accrue until the main claim has been resolved.[1] In further support of this argument, IBS contends that Cory's claim for attorneys' fees and expenses alleged under Count IV cannot convert this otherwise barred indemnity claim into a personal action accruing before settlement or judgment. Finally, IBS argues that such fees and expenses would not be recoverable, in any event, because Cory did not present evidence at trial that it had incurred such damages.

This contention has already been presented by defendant and rejected by the court's Order of June 1, 2001. In addition to the reasons stated therein we add the following. The evidence at trial established that Cory first suffered damages, and its cause of action accrued, in the fall of 1995. It was then that Cory was forced to hire counsel to defend itself against the claims asserted by IBJW and CCC as a result of the damage inflicted by Hurricane Marilyn. Cory could have sued for breach of contract and fiduciary duty as soon as any such fees and expenses were incurred and would have been entitled to recover those expenses even if never sued by IBJW. The fact that Cory did not introduce evidence of these particular expenses is of no importance as it does not in any way affect when the claim accrued. At any rate, Cory's recoverable damages was fixed by the settlement amount. That the full extent of Cory's recoverable damages was not realized until well after the cause of action accrued is neither unusual nor dispositive.

---

[1] IBS argues that Count IV is barred even if the Court finds that it is not an indemnity action, as it is still a derivative claim that did not accrue until the settlement on May 18, 2001.

-3-

IBS next argues that if the breach of fiduciary duty claim is not an indemnity action, then the failure to prove proximate cause and damages is fatal, as a breach of fiduciary duty entails a finding of (1) a duty; (2) a breach of that duty; (3) proximate causation; and (4) damages.

This argument also was previously raised and ruled upon. During arguments on the appropriate jury instructions (Report of Proceedings of June 14, 2001) defendant argued that there should be a proximate cause element in the breach of fiduciary duty instruction. Only one theory was advanced in support of this contention at that time. Defense counsel argued that if Cory failed to use reasonable care and skill in performing its obligation to appropriately interpret the information sent to it by defendant, then the damages that followed from the resulting under-insurance were not proximately caused by defendant's breach of fiduciary duty, but rather by Cory's own actions. This was the only basis or theory argued by defendant for the inclusion of a proximate cause element in the breach of fiduciary duty instructions. As pointed out then, it was the court's conclusion that the jury could only find Cory responsible for misinterpreting IBS' communication regarding the amount of insurance if it first concluded that IBS' communication did not breach its fiduciary duty to accurately inform Cory of the amount of insurance in the first place. The jury would first have to conclude that IBS did accurately inform Cory in language which Cory should have understood of the amount of insurance actually in place in order for it to then reach the question posed by IBS' counsel as the proximate cause issue, i.e., whether Cory failed to use reasonable care and skill in failing to understand the communication. But, if the jury concludes that IBS did accurately inform Cory of the insurance obtained, then there is no liability to begin with for IBS did not breach its duty in the first place. The question of causation would therefore never need to be reached. Furthermore, the trial produced no evidence to support

IBS' hypothesis that it is possible that Cory was of the mindset to misinform its client regardless of the information it received from IBS. For these reasons we reject defendant's assertions of error in this regard.

IBS also argues that the *WestAmerica* line of cases do not apply, even if the crux of Count IV was indemnification, such that proof of causation and damages is still required. It contends that the principles underlying the proper analysis are set forth in the Restatement (Second) of Judgments § 57. Under § 57, a third-party defendant indemnitor is bound to a judgment of liability against the third party plaintiff indemnitee and cannot re-litigate issues determined against the indemnitee if: (1) there was an obligation to indemnify; (2) the indemnitor was given the opportunity to defend and chose not to, and (3) the indemnitee defended itself diligently, provided there was no conflict of interest between the indemnitee and indemnitor. IBS distinguishes the *WestAmerica* line of cases, alleging that they all involved indemnification where the injured person's claim against the indemnitee did not put the indemnitor and the indemnitee in conflict depending upon which ground the injured party was successful against the indemnity, whereas in this case, there was direct conflict between Cory and IBS.

IBS further argues that it is entitled to one of the forms of relief requested, as it was deprived of its Constitutional right to a jury trial. It contends that "[a] right to jury decision on Cory's misconduct as an intervening cause of damage, a right to a jury decision on whether the amount paid by Cory to settle was foreseeable and a right to jury determination of damages proximately caused by IBS' breach are fundamental guarantees, which, when deprived, violate IBS' Constitutional rights." (IBS Mem. Supp. at 11.)

Most of these arguments we have heard before. In our June 6th opinion we dealt with

-5-

IBS' attacks on the rationale and application of the *WestAmerica* line of cases. We assume these arguments are here asserted again to protect the record as nothing has changed. IBS also asserts a new argument based upon Section 57 of the Second Restatement of Judgments. IBS cites no Illinois cases and we have found none which support or adopt Section 57 as the law of the state. Further, Section 57 does not address the issue before us which involves the effect of a settlement made in reasonable anticipation of personal liability rather than a judgment. We therefore reject this argument as a basis for a new trial or a judgment as a matter of law.

IBS next argues that the jury's finding in its favor of the breach of contract claim bars its finding on the breach of fiduciary duty claim of Count IV, as they are inconsistent.

The jury's verdict of liability as to the fiduciary duty claim is not inherently inconsistent with its verdict of no liability as to the contract claim. Essential to plaintiff's contract claim was that the evidence establish a meeting of the minds between Cory and IBS. The fiduciary duty claim, on the other hand, rested upon the opposite contention, i.e. that there was a failure to communicate and further, that this failure to communicate was as a result of IBS' breach of its fiduciary duty to properly inform Cory. Put simply, that the parties misunderstood each other with respect to the terms of the insurance policy they were contracting for, does not preclude a finding that IBS failed in its responsibility to clearly and accurately and truthfully inform Cory of the terms of the insurance policy it actually purchased on Cory's behalf. IBS' failure to properly communicate with Cory as to the terms of the policy actually purchased is independent of whether the parties ever had a meeting of the minds as to an agreement to obtain a policy in the amount of $7,667,000.

IBS additionally argues that the verdict against it on the breach of fiduciary duty claim

was against the manifest weight of the evidence, as the evidence clearly demonstrated that there was no fiduciary relationship between IBS and Cory. It contends not only that Cory had no *right to control* IBS, but it also contends that IBS and Cory are two sophisticated entities that were dealing at arms length.

We disagree. There was more than sufficient evidence upon which the jury could have properly reached the verdict it reached with respect to the fiduciary duty claim. There was ample evidence with respect to the differing degrees of sophistication of both parties as to the particular insurance transaction involved. There was also evidence regarding Cory's inability to communicate directly with Travelers. The jury, if it found Cory's version of the evidence convincing, had more than sufficient evidence upon which it could find that in seeking IBS' services as a wholesale insurance broker Cory placed trust and confidence in IBS who, as a result, gained influence and superiority over Cory. There was also conflicting expert and lay testimony regarding the meaning of the language used by IBS. This was clearly a factual issue to be decided by the jury.

IBS further argues that the use of the settlement agreement against it violated public policy, as Illinois courts have a firm policy of protecting the financial interests of non-settling parties. It points out that loan-receipt agreements are disfavored in Illinois, refers to the settlement in this case as a variant of the loan-receipt, and contends that there was no excuse to allow IBJ Whitehall and Cory's variant in this case. According to IBS, "[t]he only fair application of the settlement is (i) to treat the $20, 367, 519 as a full setoff to the claims against IBS, or (ii) to treat the $4,000,000 (or some lesser amount) Cory actually pays as the maximum amount reasonable against IBS." (IBS Mem. Supp. at 17.)

-7-

Finally, IBS contends that the court-approved settlement amount was not reasonable, as there was no basis for the Court to find $20,367,519 to be a reasonable settlement amount, "IBJ Whitehall would not have been able to show any losses to property within the scope of coverage under the policy that exceeded the $2.5 million limits of liability," and "the maximum amount that could be pursued is capped at what Cory actually paid - less than $4 million." (IBS Mem. Supp. at 18-19.)

We have previously rejected IBS' attacks upon the propriety and reasonableness of the settlement agreement and amount between IBJW and Cory. We make the same ruling now.

## Conclusion

For the reasons above given IBS' motion for judgment as a matter of law notwithstanding the verdict or, in the alternative for a new trial is denied. Judgment is hereby entered on the verdicts in favor of IBJ Whitehall Bank and Trust Co. (IBJW), as assignee of Cory, in the sum of $20,367,519 plus costs of the suit.

SO ORDERED:　　　　　　　　　　　　　　　　ENTER. 12/13/01

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Ronald A. Guzman*
　　　　　　　　　　　　　　　　　　　　　　　　**HON. RONALD A. GUZMAN**
　　　　　　　　　　　　　　　　　　　　　　　　**United States Judge**